IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOSE R. GARCIA and JANICE V. GARCIA, | § § | |
| *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. 3:20-CV-00095 |
| v. | § | |
| | § | |
| DEERE & COMPANY D/B/A JOHN DEERE COMPANY and BROOKSIDE EQUIPMENT SALES, INC., | § § § | |
| *Defendants*. | § | |

---

## PLAINTIFFS' FIRST AMENDED COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Jose R. Garcia and Janice V. Garcia (hereinafter collectively referred to as "Plaintiffs"), complaining of Deere & Company D/B/A John Deere Company and Brookside Equipment Sales, Inc. (collectively referred to as "Defendants") and for cause of action would respectfully show unto this Honorable Court and Jury as follows:

### I.    PARTIES

1.    Plaintiffs are individuals that are citizens of the State of Texas. Plaintiffs reside in Brazoria County, Texas.

2.    Defendant, Deere & Company D/B/A John Deere Company (hereinafter referred to as "John Deere"), is a corporation that is organized under the laws of Delaware with its principal place of business in Illinois. Defendant John Deere has appeared in this case.

3.     Defendant, Brookside Equipment Sales, Inc. (hereinafter referred to as "Brookside"), is a domestic corporation organized under the laws of Texas with its principal place of business in Texas. Defendant Brookside has appeared and answered in this case.

## II.    JURISDICTION

4.     The federal courts have diversity jurisdiction when the suit involves a controversy between parties of diverse citizenship and the amount in controversy exceeds $75,000.00, excluding interest and costs. 28 U.S.C. § 1332(a).

5.     As set out more fully in *Plaintiffs' Motion to Remand* (Docket No. 10), and subject to same, the Court does not have diversity jurisdiction of this matter. *Id*. When a suit is based on diversity jurisdiction, the parties to the suit must be completely diverse—no plaintiff can be a citizen of the same state as any defendant. *MacGinnitie v. Hobbs Grp.*, 420 F.3d 1234, 1239 (11th Cir. 2005). The Plaintiffs and Defendant Brookside are both citizens of Texas. Therefore, the proper jurisdiction of this suit is the 239th District Court in Brazoria County, Texas.

## III.    VENUE

6.     Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Brazoria County, Texas.

7.     Defendant Brookside's acts or omission regarding the repair of the tractor occurred at Brookside in Brazoria County, Texas.

---

## IV.    FACTS

8.      Plaintiffs reside in Brazoria County, Texas, at 1107 N. 10th Street, Freeport, Texas 77541 (hereinafter referred to as the "Home").

9.      Defendant John Deere engages in the business of designing and manufacturing certain products, including 2016 John Deere D155 Lawn Tractor, PIN: 1GXD155ERFG700039 (hereinafter referred to as the "product" and/or "Tractor"), for sale to, and for use by, members of the general public.  John Deere placed the Tractor into the stream of commerce by selling the Tractor to suppliers including Home Depot and Brookside Equipment Sales.

10.     Plaintiffs purchased the tractor at issue on April 10, 2016 at The Home Depot in Lake, Jackson Texas.

11.     At the same time, Plaintiffs also purchased a three-year warranty plan for the Tractor.  The Tractor was in the same condition as it was when it was originally manufactured and at the time it was sold by the retailer to Plaintiffs.

12.     Plaintiffs used the Tractor according to the instructions that came with it and in the manner intended and foreseen by the Defendants.  The Tractor was at all times properly maintained by Plaintiffs and used consistently with its intended use(s) as instructed by the manufacturer, Defendant John Deere.  The lawn Tractor was used by the Plaintiffs for mowing the grass at their property.

13.     On or about May 23, 2017, pursuant to the warranty they purchased for the Tractor, Plaintiffs sent the tractor to Brookside for repairs.  Specifically, the Tractor's gears were

not shifting and it was not idling correctly.  Brookside also performed service on the cab intake manifold.

14.    On or about May 18, 2019, due to a failure in the design and manufacturing of the John Deere Tractor, the product failed, causing a catastrophic fire that seriously damaged Plaintiffs' home.

15.    Freeport Fire Department's Incident Report states that the fire's area of origin was in the "[v]ehicle storage area; garage, carport."  According to the Mr. Garcia, "the only thing that [he] could see that was on fire was the John Deere" Tractor and that "there was nothing else in the garage that had a battery in it or [was] plugged in" when he first saw the fire.  No lightning occurred in the area on the date of fire.

16.    City of Freeport's Fire Chief, Christopher Motley ("Motley"), was assigned to investigate the cause of the fire.  As of July 18, 2019, Chief Motley stated that the Freeport Fire Department ("FFD") had "completed [their] scene activities and released the fire scene" and "this investigation is not part of an ongoing criminal investigation."  Chief Motley further stated that FFD had "identified witnesses who observed the fire in its' early stages.  Mr. Garcia observed the fire when it was concentrated on the John Deere riding mower."  Chief Motley stated that FFD "determined the origin to within the open garage area."  This statement is also noted in FFD's Incident Report regarding the fire.

17.    After the fire, an analysis of the tractor revealed that the fire originated in the engine compartment of the John Deere tractor.  This was also the location of some or all of the work performed by Brookside on the tractor before the fire.

---

18.     Defendant John Deere denied responsibility for the loss, forcing Plaintiffs to file this lawsuit.  Plaintiffs provided Defendant John Deere the opportunity to inspect the tractor, but Defendant John Deere did not disclose the basis for its findings, if any, after its investigation.  John Deere's refusal to accept responsibility for the fire and its refusal to share material information regarding its investigation compelled Plaintiffs to file suit in this matter.

## V.     CAUSES OF ACTION

### A.     PRODUCTS LIABILITY AGAINST DEFENDANT JOHN DEERE

19.     Plaintiffs repeat and re-allege each allegation contained above.

20.     Products liability, including strict liability, is a recognized liability theory in Section 402A, Restatement of the Law of Torts, 2d, and has been adopted by the Supreme Court of Texas.

21.     Products liability action means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict products liability, negligence misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.  TEX. CIV. PRAC. & REM. CODE. § 82.001(2).

22.     Plaintiffs will show that the products, *i.e.*, the D155 John Deere lawn tractor and/or its component parts, designed, manufactured, marketed, assembled, sold or otherwise placed in the stream of commerce by Defendant John Deere were defective.

1.    STRICT LIABILITY

23.    Plaintiffs may recover for injuries caused by a defective product on a theory of "strict products liability" if the Plaintiffs establish all of the following elements:  (1) that the product is defective; (2) that the product reached the consumer without substantial change in its condition from the time it was originally sold; (3) that the defect rendered the product unreasonably dangerous; and (4) that the defect caused the injury to the user. *McKisson v. Sales Affiliates, Inc.* 416 S.W.2d 787, 788-789 (Tex. 1967).

24.    The product in question, the Tractor, was defective and unsafe for its intended purposes at the time it left the control of Defendant John Deere and at the time it was sold by Home Depot.  The Tractor was defective in the following respects:

    a.   John Deere failed to design the Tractor so that it would not catch fire when not in use;

    b.   John Deere failed to design the Tractor with adequate safety mechanisms to prevent or mitigate the risk of fire when the Tractor was not in use;

    c.   John Deere failed to design the Tractor with adequate heat dissipation capabilities when the Tractor was used as intended and instructed by Defendant John Deere;

    d.   John Deere failed to design the Tractor with a safe and fault-free electrical system; and

    e.   John Deere failed to design the Tractor with adequate safety systems to eliminate or mitigate the risk of electrical failure when the Tractor was not in use.

Further, the Tractor failed to conform to the product design and specifications of other lawn tractors in that the Tractor caught on fire when not in use.

25.     In addition, the Tractor was defectively designed so as to render it unreasonably dangerous to Plaintiffs.  In particular, the design allowed the Tractor to catch fire when not in use.  A safer alternative design existed at the time the product was manufactured.  The safer alternative design would have prevented or significantly reduced the risk of the Plaintiffs' injuries, without substantially impairing the Tractor's utility.  Furthermore, the safer alternative design was economically and technologically feasible at the time the product left the control of Defendant John Deere by the application of existing or reasonably achievable scientific knowledge.

26.     Moreover, the Tractor was defective and unreasonably dangerous because there was no warning that the Tractor could catch fire when not in use.

27.     These defects were the producing and/or proximate cause of Plaintiffs' injuries and damages.

## 2.    NEGLIGENCE AND NEGLIGENCE *PER SE*

28.     Defendant John Deere, by and through its agents, servants, and/or employees, was negligent in manufacturing, designing and marketing of the Tractor, committed various acts and/or omissions, in one or more of the following respects, or by combination thereof:

> a.  Failing to properly design the tractor in order to minimize the occurrence of the tractor catching on fire;
>
> b.  Failing to properly test the tractor in order to minimize the occurrence of the tractor catching on fire;
>
> c.  Failing to properly manufacture the tractor so as to minimize the occurrence of the tractor catching on fire;

d.  Failing to provide adequate warnings with respect to the frequency and occurrence of the tractor catching on fire;

e.  Failing to provide adequate warnings with respect to the significant risk of serious injury and damages from the tractor involved in this lawsuit;

f.  Failing to provide a tractor that was free from design and/or manufacturing defects; and

g.  Such other acts or omissions that may be learned in discovery or at trial.

29.   These acts or omissions, taken by themselves or in combination, were a proximate cause of Plaintiffs' injuries and damages.   Each of the foregoing acts or omissions, singularly or in combination with others, constituted negligence, gross negligence, and/or malice, which were a proximate cause of the injuries and damages which form a basis of this action.

### 3.   *RES IPSA LOQUITOR*

30.   Plaintiffs cannot more specifically allege the acts or negligent manufacture or design on the part of Defendant John Deere, because facts in that regard are peculiarly within the knowledge of that Defendant.   In the alternative, in the event Plaintiffs are unable to prove specific facts of negligent design or manufacture, Plaintiffs rely on the doctrine of *res ipsa loquitor*.   In this connection, Plaintiffs will show that the character of the occurrence giving rise to this litigation is such that it would not have happened in the absence of negligence, and the design and manufacture of the Tractor was within the exclusive control of John Deere at the time the negligence probably occurred.   Plaintiffs had no means of ascertaining the method or manner in which the product was designed and manufactured, and it came

into Plaintiffs' possession in the same condition it was in when it left the control of John Deere.  Thus, Defendant John Deere was negligent in the design and/or the manufacture of the Tractor, which negligence was proximate cause of the injuries and damages sustained by Plaintiffs.

### B.    NEGLIGENCE AGAINST DEFENDANT BROOKSIDE

31.    Defendant Brookside was negligent in the services it provided the Plaintiffs.  The elements of a cause of action for negligence are the following:  (1) The defendant owed a legal duty to the plaintiff; (2) The defendant breached the duty; and (3) The breach proximately caused the plaintiff's injury.  *Nabors Drilling, U.S.A., Inc., v. Escoto*, 288 S.W.3d 401, 404.  Defendant Brookside owed Plaintiffs a duty to exercise reasonable care in performing its work on the tractor.  *Torrington Co. v. Stutzman*, 46 S.W.2d 829, 838 (Tex. 2000).

32.    On the occasion in question, Brookside, by and through its agents, servants and/or employees, committed various acts and/or omissions each of which was negligent and a proximate and/or producing cause of the occurrence and injuries in question, including, but not limited to, the following:

  a.   Failing to properly and adequately inspect the Tractor;

  b.   Failing to properly maintain the Tractor;

  c.   Failure to properly repair the Tractor;

  d.   Failing to warn Plaintiffs that the Tractor at issue was unsafe for its intended and foreseeable use;

---

e.  Failing to perform its repairs to the Tractor in a reasonable and non-negligent manner;

f.  Failure to diagnose and repair the dangerous condition in the Tractor that ultimately caused it to catch fire when not in use; and

g.  Such other and further acts and/or omissions of negligence as may be shown by the evidence at the trial of this cause.

33.    Each one of the foregoing acts or omissions constitutes a breach of duty.  These acts or omissions, taken by themselves or in combination, were a proximate cause of Plaintiffs' injuries and damages.  Each of the foregoing acts or omissions, singularly or in combination with others, constituted negligence and/or gross negligence, and were a proximate cause of the injuries and damages which form a basis of this action.

## VI.    EXEMPLARY DAMAGES

34.    Defendants' acts or omissions described above, when viewed from the standpoint of Defendants at the time of the acts or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiffs and others. Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs and others.

35.    Based on the facts stated herein, Plaintiffs requests exemplary damages be awarded to Plaintiffs from Defendants.

## VII.    DAMAGES

36.    Plaintiffs will show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

37.    For negligence, negligence per se, and *res ipsa loquitor*, the  Plaintiffs are entitled to recover their actual damages, pre- and post-judgment interest and costs of court.

## VIII.  PRAYER

38.    WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial hereof, said Plaintiffs have and recover such sums as would reasonably and justly compensate Plaintiffs in accordance with the rules of law and procedure, as to actual damages.  In addition, for all costs of Court on Plaintiffs' behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

**HAUN MENA, PLLC**

By:　 */s/ Ryan K. Haun*　　　　　　
　　　　RYAN K. HAUN
　　　　Texas Bar No. 24055634
　　　　Federal Bar No.  712457
　　　　HAUN MENA, PLLC
　　　　3006 Brazos Street
　　　　Houston, Texas 77006
　　　　(713) 781-8600 - Telephone
　　　　(713) 781-8601 - Fax
　　　　ryan@haunmena.com

　　　　ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:
HAUN MENA, PLLC
D. Douglas Mena
Texas Bar No. 24054982
Federal Bar No.  900712
3006 Brazos Street
Houston, Texas 77006
(713) 781-8600 – Telephone
(713) 781-8601 - Fax
doug@haunmena.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 24th day of April 2020, a true and correct copy of the

foregoing was delivered to counsel for Defendant in accordance with the Federal Rules of

Civil Procedure:

WHITE & SHAVER
Clay M.White
State Bar No. 2129222
11200 Westheimer Road, Suite200
Houston, Texas 77042
cwhite@whiteshaverlaw.com

Adam Allen
705 W. Locust
Tyler, Texas 75702
AAllen@whiteshaverlaw.com
COUNSEL FOR DEFENDANT,
Brookside Equipment Sales, Inc.


GERMER BEAMAN & BROWN PLLC
Chris A. Blackerby
Ben T. Zinnecker
301 Congress Avenue, Suite 1700
Austin, Texas 78701
cblackerby@germer-austin.com
bzinnecker@germer-austin.com
COUNSEL FOR DEFENDANT,
Deere & Company D/BA
John Deere Company


*/s/ Ryan K. Haun*
RYAN K. HAUN